KNOXTENN THEATRES, INC., *et al. v.* DANCE *et al.*

(*Knoxville,* September Term, 1947.)

Opinion filed January 16, 1948.

Rehearing denied February 28, 1948.

CATES, FOWLER, LONG & FOWLER, of Knoxville, for appellants.

CHARLES L. CORNELIUS, of Nashville, *amicus curiae.*

CLYDE W. KEY, of Knoxville, for appellees.

MR. JUSTICE TOMLINSON delivered the opinion of the Court.

The only question on this appeal is whether the Chancellor erred in dismissing complainant's bill attacking the constitutionality of Chapter 776, Private Acts of 1947. Each of the four assignments of error insists that the Act violates Article I, Section 8, Article XI, Section 8 of the Constitution of the State and the 14th Amendment to the Federal Constitution, being the due process and equal protection clauses.

The act applies only to Knox County on a population classification. It levies a tax of one cent for each twenty cents or major fraction thereof paid for an admission ticket to a place of amusement in Knox County. The tax is levied on and required to be paid by the person purchasing the admission ticket. The operator is required to collect the tax when he receives the admission fee and delivers the ticket in exchange, and is also required to keep certain records so that there may be ascertained the amount of tax which should have been collected. Penalties are imposed for failure to collect and pay over at specified times this tax. All such taxes collected on places of amusement located within the limits of a municipality of Knox County must be paid to and is the property of that municipality for use in the operation of its government. If the place of amusement is located in the county outside

of municipal boundaries the tax is to be paid to and be the property of Knox County for use in paying expenses of its government.

Appellants say that this act violates the constitutional provisions mentioned in that, they say, "the right to be admitted thereto and to attend such amusements is a natural right which is not subject to be declared a privilege and taxed as such". In passing, it is appropriate to observe that many of the natural rights of man have necessarily been regulated by laws enacted under the police powers and under the power to raise revenue.

 Upon many occasions there has been presented to this Court for decision the question of the extent of the power of the legislature to declare privileges under Article II, Section 28 of the Constitution providing that "the Legislature shall have power to tax Merchants, Peddlers and Privileges, in such manner as they may from time to time direct". There is so wide a variety of facts in these cases as to make them exactly appropriate in the instant case only in so far as they declare principles. In *Jenkins* v. *Ewin, Clerk*, 55 Tenn. 456, 478, this Court, considering this constitutional provision held "that the power of the Legislature to tax merchants, peddlers, and privileges, is unlimited and unrestricted, and might be exercised in any manner and mode in their discretion". In the case of *Burke* v. *Memphis*, 94 Tenn. 692, 695, 30 S. W. 742, this Court said that: "A privilege is whatever the legislature choses to declare and tax as such". Then followed the line of cases of which *Trentham* v. *Moore*, 111 Tenn. 346, 353, 76 S. W. 904, 905, is representative, wherein it was held that "the Legislature cannot tax a single act, *per se*, as a privilege, inasmuch as such act, in the nature of things, cannot, in and of itself, constitute a business, avocation, or pursuit". This would

seem to limit the privilege to something that constituted a business or avocation. However, in *Ogilvie* v. *Hailey*, 141 Tenn. 392, 397, 210 S. W. 645, 647, this Court had under consideration a special act which levied a privilege tax "on automobiles . . . used for pleasure" in Davidson County. Priv. Acts 1915, c. 407. This Court upheld the act, saying: "It is next insisted that the use of automobiles for pleasure cannot be declared a privilege, inasmuch as such use is not the pursuit of any business or occupation, and it is sought to limit a privilege to such pursuits. While some of our older cases apparently justify these arguments, later decisions of this court declare that the doing of a single act may be declared a privilege. . . . In view of our later decisions, we have no hesitation in holding that the Legislature may declare it to be a privilege to operate pleasure cars over the turnpike roads of our counties." While this case is not entirely in point here in that it involved the use of the public roads of the county, it is important here in that (1) it definitely overrules the insistence that nothing but a business or occupation may be declared a privilege and (2) holds that the pursuit of a pleasure may be taxed as a privilege and that a single act may be taxed as such. Subsequently, in *H. G. Hill Co.* v. *Whitice*, 149 Tenn, 168, 175, 258 S. W. 407, 409, this Court declared that: "The power of the Legislature to declare and tax privileges is unlimited. Its discretion in this regard cannot be restrained or controlled by the Courts." In *Foster & Creighton Co.* v. *Graham*, 154 Tenn. 412, 429, 285 S. W. 570, 575, 47 A. L. R. 971, it was held that: "The Legislature has unlimited and unrestricted power to tax privileges, and this power may be exercised in any manner or mode in its discretion." In view of these holdings, there seems to be no escape from the conclusion that under

Section 28 of Article II of our Constitution the legislature may impose a tax to be paid by the purchaser of a ticket for admission to a theatre or picture show or other place of amusement, the operation of which has by the legislature been declared to be a taxable privilege.

The act is assailed also upon the theory that it confers upon Knox County and Knoxville benefits not made available to any other of the counties or cities of the State and imposes upon those attending amusements in Knox County a burden not so imposed elsewhere in the State and, therefore, violates the constitutional provisions referred to. It is a fact that special benefits are conferred by the act upon Knox County and its municipalities only, and that burdens in the form of a tax applicable to that county alone are imposed upon those attending theatres, picture shows, etc., in that county. When that reason is assigned for an attack upon the constitutionality of a special act as violative of these constitutional provisions, the issue cannot be determined until after it is ascertained whether the act primarily affects the county or municipality in its governmental or political capacity or whether primarily, rather than as a resulting incident, it affects the citizens of the governmental unit involved in their individual relations. This controlling distinction is clearly stated in our case of *Darnell* v. *Shapard*, 156 Tenn. 544, 552, 553, 3 S. W. (2d) 661, thus: "The determination of the validity of acts of the Legislature attempting a classification of the counties of the State is largely influenced by the character of the legislation. If an act of the legislature affects particular counties as governmental or political agencies, it is good. It is good if it affects only one county in this capacity. No argument is required to sustain such an act. If, however, an act of the Legislature primarily

affects the citizens of particular counties or of one county in their individual relations, then such classification must rest on a reasonable basis, and, if the classification is arbitrary, the act is bad.'' Attention was again called to this controlling distinction in *State ex rel. Bales* v. *Hamilton County*, 170 Tenn. 371, 374, 95 S. W. (2d) 618, 619, in this language: ''A distinction is to be drawn, however, between legislation primarily designed to affect the governmental agency as such and legislation designed primarily to affect the employees or citizens of such governmental agency as individuals''.

■ ■ The special act attacked in this case clearly reflects it as a fact that it is ''not designed primarily to affect'' those attending theatres, etc., in Knox County, but that its primary purpose is to raise revenue for Knox County and its municipalities by the collection of the tax levied by this act. ''The collection of taxes is beyond question a governmental function''. *Southern* v. *Beeler, Atty. Gen.*, 183 Tenn. 272, 285, 195 S. W. (2d) 857, 863. The burden of paying the tax is the resulting incident of that primary purpose. It results that under the controlling distinction as restated in *Darnell v. Shapard, supra*, and in *State ex rel. Bales* v. *Hamilton County, supra*, this act does not offend these constitutional provisions, since it primarily affects Knox County and its municipalities as governmental agencies. The Trotter case, *State ex rel. Scandlyn* v. *Trotter*, 153 Tenn. 30, 281 S. W. 925, and the Town of McMinnville case, *Town of McMinnville* v. *Curtis*, 183 Tenn. 442, 192 S. W. (2d) 998, quoted from at length in the briefs, expressly point to this distinction and hold the special acts there under attack invalid because they were primarily designed to affect the citizens involved in their individual capacity or relations.

■ It is our opinion that appellants are mistaken in their conclusion that this special act suspends the general law enacted by Chapter 108 of the Public Acts of 1937, carried in William's Code as Section 1248.133. That provision levies a privilege tax for state purposes alone on ''each person operating a theatre or motion picture or vaudeville show'' and forbids any county or municipality from likewise taxing such operator. Williams' Code Section 1248.119. The act under consideration here does not levy a privilege tax upon the operator of such place. It is very careful to avoid this. It levies a tax upon the individual purchasing a ticket of admission into such place of amusement. The pertinent language of the act is ''the tax to be levied on, and paid by, the person paying for said admission''.

■ It is next contended that these constitutional provisions are violated in that the ''statute does not operate equally for the benefit of all sections of Knox County'' since the revenue collected by places of amusement inside the municipalities are expended exclusively for and by the municipal government. The tax is levied directly by the legislature. It is levied on the admission charged by any place of amusement in Knox County (except amusements for certain patriotic or religious purposes), without regard to whether such place is located within or without municipal boundaries. It is likewise for the benefit of the county as such, and of the city as such. Such action is authorized. In *Hill* v. *Roberts*, 142 Tenn. 215, 222, 217 S. W. 826, 828, it is said that: ''The County and City are but arms or instrumentalities of the State. The State, therefore, having full control of these agencies, in the matter of taxation at least, may authorize such agents to levy a tax, or may direct such agents to levy a tax, or may itself directly tax for the benefit of these agencies''.

If the legislature may "directly tax for the benefit of these agencies", we can conceive no reason why it may not directly apportion the tax collected upon some basis not palpably unreasonable between these agencies, for each of which a portion of the tax was intended. The basis of apportionment employed does not seem to us to be unreasonable. The people residing in the municipalities are residents of the county and, as such, are entitled equally with those residing outside the municipality to the benefits obtained by the expenditure of county revenue. But those residing outside the municipalities are, of course, not residents of the municipality and are not, therefore, *per se,* entitled to the benefits obtained by the expenditure of municipal revenue for municipal purposes.

Finally, it is insisted that the constitutional provisions referred to are offended in that the act requires the operators of these places of amusement, which they are operating for gain, to collect from customers and pay over without compensation this tax, and provides penalties for failure in these respects. No authority is cited in support of this insistence other than reference to the constitutional provisions. The conducting of such places of amusement in Knox County has been declared a privilege by act of the legislature. We see no reason why the legislature may not exact the doing of reasonable acts which it conceives to be necessary in connection with the exercise of the privilege granted, to the end that there may be accomplished the results intended to be accomplished in connection with the exercise of the privilege. It must be noted that these operators are not required to exercise the privilege granted. So, "the element of absolute and unavoidable demand is lacking". The exercise of the privilege is always voluntary upon their part, and is a privilege taken advantage of by them

for the purpose of monetary gain. They cannot so long as they elect to accept this advantage be allowed to say that reasonable requirements in connection with the exercise of such privilege may not be exacted of them. We think the requirement in question is not offensive.

All assignents of error overruled and the decree of the Chancellor is affirmed.

All concur.

## ON PETITION TO REHEAR.

It is frankly stated by KnoxTenn Theatres, Inc., in its petition to rehear that the insistences advanced in this petition are closely "interwoven" with arguments previously made. Any extensive response to these insistences would necessarily amount principally to a repetition of the statements in our opinion heretofore rendered.

It is first asserted that it is not declared a privilege either by the statute now under consideration or any other statute to attend places of amusement where an admission fee is charged.

The original brief filed by this petitioner in support of its assignments of error correctly construed the act as making it a taxable privilege to attend in Knox County the places of amusement referred to in the act. The petition to rehear indirectly recognizes and expressly anticipates the thought that "the levy of the tax implies the purpose to create a privilege". It is now insisted, however, "that the privilege must be created beforehand" or by the act itself by express words.

While we find no decision on the exact point, our Court does not seem to have considered such a rigid requirement as essential. By way of illustration, the Tennessee Inheritance Tax Law enacted by Chapter 29 of the Public Acts of 1929, Extra Session, no where expressly

declares the receiving of property from the estate of decedents a taxable privilege. Yet, in *Hutchinson* v. *Montgomery*, 172 Tenn. 375, 379, 112 S. W. 2d 827, 830, this Court in discussing that act held that the act indicates an intent to impose a tax ''upon the privilege of receiving property'' and concludes with the statement, page 384 of 172 Tenn., page 830 of 112 S. W. 2d, that the act ''is a tax upon the privilege of acquiring'' property from the estate of a decedent. To hold upon this point as insisted in the petition to rehear would amount to a violation of the general rule that ''we must give full scope to the legislative intent and apply a rule of construction that will not defeat the plain purposes of the act''. *Bergeda* v. *State,* 179 Tenn. 460, 466, 167 S. W. 2d 338, 340, 144 A. L. R. 696. It seems to be recognized on all sides in this case that the plain purpose of this act, as reflected by its provisions, is to make it a taxable privilege to attend the places of amusement referred to in the act. By necessary implication this statute makes the act in question a taxable privilege.

The next insistence is that ''the General Assembly is without authority to declare the right to attend such amusements a taxable privilege''. We doubt that we can make any more comprehensive response to this insistence than that made in our original opinion. We do direct attention, however, to the opinion written for this Court by Chief Justice GREEN in the case of *Seven Springs Water Co.* v. *Kennedy,* 156 Tenn. 1, 299 S. W. 792, 56 A. L. R. 496, wherein it is said: ''In fact it has been said in two of our cases that, if thought proper, the Legislature might make the business of farming a privilege. . . . The term 'privilege' embraces any and all occupations that the Legislature may in its discretion choose to declare a privilege and tax as such. , , , Under more

recent cases, a single act may be declared a privilege.'' A number of our cases are cited by the Chief Justice in support of these statements at page 5 of 156 Tenn., 299 S. W. 793.

Next there is renewed the insistence that the act imposes upon those attending such places of amusement in Knox County a burden not so imposed upon people elsewhere in the state and confers special favors upon Knox County and Knoxville. We undertook to dispose of this insistence in the opinion now very courteously questioned. It must be recognized that the statute in question was intended to and does primarily effect Knox County and Knoxville in their governmental capacities, and that the payment of the tax by the individual exercising the taxable privilege is the resulting incident of that primary purpose. That conclusion is inescapable. This being true, the fact that it affects only Knox County and Knoxville does not render the act unconstitutional unless it suspends a general law applicable to all other counties and cities of the state, in which event it must be predicated upon a reasonable basis. *Darnell* v. *Shapard*, 156 Tenn. 544, 3 S. W. (2d) 661; *Town of McMinnville* v. *Curtis*, 183 Tenn. 442-448, 192 S. W. (2d) 998, and cases there cited. The act does not suspend any general law applicable to the other counties and cities of this state.

Our opinion previously rendered disposed of the question with reference to requiring operators of these places of amusement to collect the tax imposed from their customers. So, it will not be again discussed, since we reached what we consider to be a correct conclusion upon that question.

The petition to rehear must be denied.

All concur.